**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03060-DDD-SBP

GRANT MITCHELL SAXENA,

      Plaintiff,

v.

MARY LOUISE HALL and
DANIELLE KAY KUNZE,

      Defendants.

---

**AMENDED[1] SECOND RECOMMENDATION TO DISMISS THIS ACTION
WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION
AND ORDER ON SEVERAL MOTIONS**

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before the court on Judge Daniel D. Domenico's Order of October 27, 2023, ECF No. 85, returning the Recommendation to Dismiss (ECF No. 64, "First Recommendation") to this court to consider evidence that the pro se Plaintiff filed with a motion to supplement in this case, ECF No. 69 ("Motion to Supplement"). This court also considers the matter pursuant to its authority under 28 U.S.C. §§ 636(b)(1)(A) and (B) and the Order Referring Case. ECF No. 4.

      As explained below, the Motion to Supplement rests solely on arguments and facts that were available to Plaintiff when he originally responded to the Order to Show Cause (ECF No. 51, "OSC" filed June 13, 2023) why this court should not recommend dismissal. This court

---

[1] The amendment is noted in bold font on pages 29-30.

nevertheless considers the Motion to Supplement on its merits and finds that Plaintiff still has not shown where he was domiciled when he filed this action on November 28, 2022.

This court has no more idea where Plaintiff resided—and where he intended to remain—when he filed this action than when it issued the First Recommendation. In once again recommending that this case be dismissed without prejudice for lack of subject matter jurisdiction, the court has proceeded with care, mindful of the Tenth Circuit's directive that jurisdiction can never be assumed and must be subject to rigorous scrutiny by the trial court. *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 542, 544 n.5, 555 (10th Cir. 2016) (remanding case to district court to dismiss for lack of jurisdiction where district court's finding that plaintiff had Article III standing to challenge a statute was grounded on "some generous assumptions," and emphasizing that a ruling based on incorrect assumptions about jurisdiction "is no ruling at all") (citation omitted). *See also Baker v. Wells Fargo Bank, N.A.*, No. 19-cv-03416-RBJ-NYW, 2020 WL 5079060, at *3 (D. Colo. Aug. 3, 2020), *report and recommendation adopted sub nom. Baker v. Wells Fargo*, 2020 WL 5076802 (D. Colo. Aug. 26, 2020) ("a federal court cannot assume subject matter jurisdiction," citing *Colorado Outfitters* and recommending dismissal for lack of federal subject matter or diversity jurisdiction).

As will be seen, Plaintiff has three pending actions in which he asserts diversity jurisdiction: 22-cv-212-DDD-SBP, *Saxena v. Law Offices of Tray Stephany*; 22-cv-573-DDD-SBP, *Saxena v. Kunze*; and the instant case, 22-cv-3060-DDD-SBP, *Saxena v. Hall, et al.* The court rules separately in each case—despite the legal analysis being very similar in all three—because Plaintiff filed the three cases on different dates, asserting different states of citizenship and different addresses.

## FACTUAL BACKGROUND

This court previously outlined the relevant procedural history and fact allegations in the OSC and First Recommendation. The court assumes familiarity with those rulings.

I.    *The Complaint*

Plaintiff filed this action on November 28, 2022. ECF No. 1 (original complaint). In the original complaint, Plaintiff brought state law claims of libel, slander, and defamation per se against Ms. Hall under Colorado law. *Id.* at 3. Specifically, he alleged conduct by Ms. Hall on February 17, 2022, and March 21, 2022, during hearings held by state courts in Denver. *Id.*

To support jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, Plaintiff alleged that Ms. Hall is a citizen of Colorado. *Id.* at 2. Plaintiff alleged he "is a citizen of the State of Nevada," but provided his address as "Unit #2051, 275 New North Road, London, N1 7AA." *Id.* In that pleading, he provided a phone number: "+44 20 3086 7796." The court takes judicial notice that 44 is the country code for the United Kingdom. *See, e.g.,* Telephone numbers in the United Kingdom - Wikipedia, accessed January 3, 2024.[2]

II.   *The Amended Complaint*

On February 8, 2023, Plaintiff amended his complaint. ECF No. 19. Therein, he again asserts that he "is a citizen of the State of Nevada" and lists the same address in London. *Id.* at 2, 3. The amended complaint adds a second defendant, Danielle Kay Kunze, who Plaintiff alleges is a citizen of Colorado. *Id.* Plaintiff sues both Defendants on several state law claims: damages

---

[2] The court can take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

from an act of domestic violence, libel, slander, assault, civil conspiracy, and negligent infliction

of emotional distress. Plaintiff also alleges tampering with a witness, perjury and false swearing,

though he cites criminal statutes to define that conduct.

In his amended complaint, Mr. Saxena also alleges facts reflecting he had a home in

Denver, Colorado in which he lived during 2017-18, if not also during the more recent years of

Defendants' alleged wrongful conduct:

> [A] friend of Hall, Jesse Joseph Cummins, who I learned is a felon, introduced Kunze to me in 2018 by inviting Kunze to *my home,* and also,
>
> a. Kunze harbors resentment for being denied a request to squat at *my house* …
>
> b. I have strong reason to believe Cummins arranged for Kunze to elicit the sale of illegal narcotics *at my home* to gain monetary profit for himself.
> * * *
> f. … Hall who normally works as a housekeeper for many clients of her business, initially came over to render services to *my studio property at 2652 King St, Denver, CO 80211* briefly between March - June in 2017.
> * * *
> 2. … [P]eople such as Hall, Kunze and Cummins, attempt to take advantage of a perception of expendable income through various extortion schemes like pretending to be friends, or domestically interested, who then attempt to sell me drugs, or invest in unlicensed businesses, even staying *at my house* without paying rent.
>
> 3. This all starts from Kunze. After being *removed from my property by Denver Police,* Kunze retaliated several times from April 2018 - March of 2022 by committing false reporting, perjury, false swearing, negligently inflicting emotional distress, and later witness tampering and conspiring with Hall to work in unison to fabricate negative records on Dr. Saxena.
> * * *
> D. Later, Hall used the false reports plus defamation from Kunze who stalked her on Facebook, to falsely report *to Lakewood and then Denver police* and courts to reopen what became case 18M4752's investigation and 18W0572 which is a duplicate TPO from the 18M case.

Am. Complaint, ECF No. 19 at 7-8 (emphasis added).

The 18M4752 case to which Plaintiff refers in the Amended Complaint is the same

Denver County Court criminal proceeding that Plaintiff also alleges in 22-cv-212: *People v. Grant M. Saxena*, No. 18M04752 (Denver County Court), in which he was charged on May 11, 2018. *See* Register of Actions for Case Number 18M04752, *Saxena v. Jackson*, No. 1:23-cv-00213-DDD-SBP (D. Colo.), ECF No. 21-1 at 5.[3] On January 3, 2019, Plaintiff was found guilty of the charge following a jury trial. *Id.* at 2. The criminal case formally closed on January 24, 2020, and Plaintiff's conviction has not been overturned. *See id.* at 1.

III.     *The OSC, Order Overruling Objection, and Plaintiff's Response to the OSC*

This court issued the OSC on June 13, 2023, noting the lack of factual allegations to support Plaintiff's conclusory assertion that he was a citizen of Nevada when he filed this case, the discrepancy between that assertion and Plaintiff's London address, as well as several discrepancies in his assertions pertinent to his state of citizenship among his several pending cases. OSC at 5-7. The OSC outlined the applicable law, including that Plaintiff has the burden of proving his domicile by a preponderance of the evidence and that courts determine a litigant's domicile for purposes of diversity jurisdiction based on the totality of the circumstances. *Id.* at 4, 5, 8. The OSC specifically identified several factors that courts typically consider in evaluating domicile. *Id.* (citing *Ordonez v. Am. Auto. Ins. Co.*, No. 18-cv-02906-PAB, 2018 WL 6075251, at *2 (D. Colo. Nov. 21, 2018); *Middleton v. Stephenson*, 749 F.3d 1197, 1200-01 (10th Cir. 2014)). The OSC set a deadline of July 12, 2023, for Plaintiff to "provide an evidentiary basis for

---

[3] The court takes judicial notice of this publicly-filed court record. *See, e.g.*, *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (whether on a motion or sua sponte, the court can take judicial notice of its "own records and files, and facts which are part of its public records"); *accord, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

where he was domiciled, within the meaning of the law cited in this order, when he filed this action." OSC at 10-11.

On June 27, 2023, Plaintiff objected to the OSC. ECF No. 53 ("Objection"). Therein, Plaintiff asserted that he has not been domiciled in Colorado since January 2020; that the hearings held in Denver (in which allegedly wrongful conduct occurred) were held virtually; that it was baseless to assume he was domiciled in Colorado after he completed his sentence in Colorado; that the phone number beginning with area code 303—which is *not* the United Kingdom phone number Plaintiff provided in this case, but is the phone number he provided in another of his pending cases—is allegedly just for purposes of conferring with opposing parties; that his varying allegations of domicile in Nevada and Florida reflect that he maintains split residency between Florida and Nevada; and that his intent to become a citizen of the United Kingdom and his alleged address of "Suite 206, #3044" on a street in West Palm Beach do not call into question his allegations of citizenship. *See generally* Objection.

On the day his response to the OSC was due, Plaintiff filed a "Reply . . . Requesting Extension of Time to Answer" the OSC. ECF No. 54. Plaintiff sought an extension until his Objection was resolved.

On July 18, 2023, Judge Domenico overruled Plaintiff's Objection. ECF No. 56 ("Order Overruling Objection"). Among other things, the Order Overruling Objection noted that "a negative statement that [Plaintiff] was not a citizen of Colorado when he filed suit is insufficient to establish diversity jurisdiction because it does not eliminate the possibility that he was not a citizen of any state, which would destroy diversity." *Id.* at 3 & n.1 (citing cases).

On August 8, 2023, this court granted Plaintiff's requested extension in part, allowing

Plaintiff until August 11, 2023, to respond to the OSC. ECF No. 57.

On August 12, 2023, Plaintiff finally responded to the OSC. ECF No. 60 ("Response to the OSC"). Despite Judge Domenico having already noted that a negative statement of non-domicile is insufficient, Plaintiff again made the same negative assertion that he "is not a resident, nor citizen, and does not have domicile in Colorado since January of 2020." *Id.* at 3. Notably, Plaintiff did not sign the response under penalty of perjury, and he did not swear to it before a notary public as an affidavit. With his Response to the OSC, Plaintiff submitted only a single piece of evidence: a Florida resident fishing license issued on March 26, 2020. ECF No. 59.[4] It is labeled a "Disability License - 2 year SSA Qualification" that was valid until March 26, 2022——i.e., two months remained on the fishing license when Plaintiff filed this lawsuit. The license lists the address in Cape Coral, Florida, that Plaintiff has publicly provided in ECF for some of his other cases.

IV.    *The First Recommendation*

On August 16, 2023, this court issued the First Recommendation. ECF 64. The court

---

[4] Plaintiff filed the fishing license under a Level 2 restriction on access, subject to a pending motion for leave to restrict in this case, ECF No. 70, but none of the information that this Recommendation (or the First Recommendation) discusses from this document is confidential or private. In the Motion to Supplement, which is further discussed below, Plaintiff contends that the nature of the document and its issuance and expiration dates are confidential, but he cites no authority to support this view. ECF No. 69 ¶ 8. He argues the Defendants in his cases—some of whom he alleges have subjected him to domestic violence—could use his Florida fishing license to "create more malicious records, steal identification information, and ultimately cause serious and irreparable harm" to Plaintiff. ECF No. 70, Motion to Restrict at 2. But Plaintiff does not explain how the dates of his Florida fishing license (or any of the documents he filed with the Motion to Supplement) would give anyone the ability to create malicious records, steal his identity, or harm him.

again outlined the applicable law concerning domicile—emphasizing again that Plaintiff bears the burden of proof, that the court determines the issue based on the totality of the circumstances, and that several factors typically inform the court's consideration of the issue. First Recommendation at 5-8. This court then considered Plaintiff's Objection and Response to the OSC, the fishing license, and the inadequacies and inconsistencies of Plaintiff's allegations concerning his citizenship. This court found that Plaintiff failed to show where he was domiciled when he filed this action and therefore recommended dismissal without prejudice for lack of subject matter jurisdiction. *Id.* at 9-11.

V.     *Plaintiff's Motion to Supplement and Objection to the First Recommendation*

On August 27, 2023, Plaintiff filed a motion to supplement his response to the OSC. ECF No. 69 (the Motion to Supplement). Plaintiff attached there four types of factual materials: (1) a declaration from himself, (2) a lease contract that he did not sign, (3) a 2023 letter from the Department of Veterans Affairs ("VA"), and (4) a copy of his Florida driver's license. 22-cv-3060, ECF Nos. 69-1, 71, 72, 73. This court discusses these items in turn, below.

On August 30, 2023, Plaintiff objected to the First Recommendation. ECF No. 74. He referred therein to the Motion to Supplement and the records he submitted with it. *Id.* at 2 ¶¶ 4, 5. On October 27, 2023, Judge Domenico overruled the objection without prejudice and returned the First Recommendation to this court for consideration of the evidence Plaintiff filed with the Motion to Supplement. ECF No. 85.

VI.     *Other Motions and Objections*

*Ms. Hall* answered the amended complaint. ECF No. 36. Plaintiff has two motions pending concerning Ms. Hall's answer: one for a more definite statement of the answer and one

to strike the answer for failing to provide a more definite statement. ECF Nos. 42, 45.

The Clerk's office has entered default against *Ms. Kunze* on Plaintiff's request. ECF No. 38. Plaintiff's motion for default judgment against Ms. Kunze remains pending. ECF No. 48.

In addition, on August 27, 2023, Plaintiff moved for the recusal of Judge Domenico and the undersigned magistrate judge. ECF Nos. 67, 68. Those motions were subsequently denied. ECF Nos. 83, 86. Plaintiff has objected to this court's denial of his motion to recuse. ECF No. 87. Plaintiff also has a pending motion (ECF No. 75) to consolidate this case with 23-cv-213, and a motion (ECF No. 80) to strike Ms. Hall's response briefs filed at ECF Nos. 76-79. For the reasons Ms. Hall states in her response (ECF No. 82), Plaintiff's motion to strike (ECF No. 80) is DENIED IN PART and FOUND MOOT IN PART. Ms. Hall's responses in ECF Nos. 76, 77, and 79 were filed timely. Her response filed in ECF No. 78 to Plaintiff's objection (ECF No. 74) was not timely under Rule 72(b)(2), but Judge Domenico has already overruled the objection without prejudice.

## LEGAL STANDARDS

### I.    *Motions to Reconsider*

Although not titled as such, Plaintiff's Motion to Supplement is a motion for reconsideration of the First Recommendation. The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration "fall[] within [the] [c]ourt's plenary power to revisit and amend interlocutory orders as justice requires." *Armata v. Certain Underwriters at Lloyd's London-Syndicate 1861*, No. 21-cv-00160-NYW-STV, 2023 WL 5310175, at *3 (D. Colo. Aug. 15, 2023) (internal quotation marks omitted); *see also FTC v.*

*Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) ("The decision to grant reconsideration is committed to the sound discretion of the district court.") (cleaned up).

The court is to consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (courts may grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice"). Motions to reconsider "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* "Absent extraordinary circumstances, . . . the basis for the second motion must not have been available at the time the first motion was filed." *Id.*

II.   *Diversity Jurisdiction*

   A.   *Federal Courts' Limited Jurisdiction: Diversity of Citizenship*

The pertinent legal standards for diversity jurisdiction remain the same as noted in the OSC and the First Recommendation. "The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citation omitted). "Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists . . . at any stage in the litigation." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1208 (10th Cir. 2012). "If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte.* Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a

federal court by consent, inaction or stipulation." *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (internal quotation omitted).

It is well-settled that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). Therefore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). If the court lacks subject-matter jurisdiction, the dismissal is without prejudice. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006); *Am. Cricket Premier League, LLC v. USA Cricket*, 445 F. Supp. 3d 1167, 1181 (D. Colo. 2020) (same).

As relevant to the jurisdictional analysis here, Congress has accorded the district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Thus, "diversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'" *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). "[A] party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence." *Id.* "[A] court can require an evidentiary showing of jurisdiction to resolve . . . inadequate allegations." *Mikelson v. Conrad*, 839 F. App'x 275, 277 (10th Cir. 2021).

*B.     Domicile for Purposes of Diversity Jurisdiction*

"For purposes of diversity jurisdiction, a person is a citizen of a state if the person is *domiciled* in that state." *Id.* (emphasis added). "And a person acquires domicile in a state when

the person resides there and intends to remain there indefinitely." *Id.* (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.")). Thus, "domicile, not residency or mailing address, is determinative of citizenship." *Pac. Specialty Ins. Co. v. Poirier*, No. 18-cv-00880-PAB, 2018 WL 4697323, at *1 (D. Colo. June 27, 2018) (citing *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity.")); *see also Holyfield*, 490 U.S. at 48 ("Domicile 'is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another," citations omitted). "[T]he relevant time period for determining the existence of complete diversity is the time of the filing of the complaint." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).

In evaluating domicile, a court may consider factors that include a litigant's "residency, work address, vehicle registration, and ownership of real property in a particular state," but while these factors "are indicative of domicile, they are not conclusive." *Ordonez v. Am. Auto. Ins. Co.*, No. 18-cv-02906-PAB, 2018 WL 6075251, at *2 (D. Colo. Nov. 21, 2018) (citing *Middleton*, 749 F.3d at 1200-01 (stating that courts should "consider the totality of the circumstances" to determine a party's domicile)). Therefore, "[c]ourts typically consider several other factors in determining a party's citizenship, including voter registration and voting practices; . . . location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes." *Id.* (quotation and citation omitted).

In addition, as noted above, "a negative statement that [a plaintiff] was not a citizen of Colorado when he filed suit is insufficient to establish diversity jurisdiction because it does not eliminate the possibility that he was not a citizen of any state, which would destroy diversity." Order Overruling Objection at 3 (citing cases). For instance, "[a] United States citizen domiciled in a foreign country . . . is stateless and unable to assert jurisdiction" under Section 1332; "[a] United States citizen living abroad may only invoke diversity jurisdiction if the party is domiciled in a particular State." *Id.* at 4 n.2 (quoting *Jones v. Dalrymple,* 679 F. App'x 668, 669 (10th Cir. 2017)). Nor does it suffice for a plaintiff to supply mailing addresses and residences in multiple states, living a "transient, nomadic life," as this does not establish citizenship in any state. *Id.* at 4 n.2 (quoting *McCracken v. Murphy*, 328 F. Supp. 2d 530, 532 (E.D. Pa. 2004), *aff'd,* 129 F. App'x 701 (3d Cir. 2005)).

III.    *Pro Se Litigant*

Finally, because Plaintiff is pro se, the court liberally construes his pleading to do substantial justice. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "[t]his liberal treatment is not without limits, and this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation omitted). "'[T]he generous construction that we afford pro se pleadings has limits, and we must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012) (assuming without deciding that the liberal construction principles applied in a jurisdictional inquiry).

## ANALYSIS

Applying the above legal standards to this case, the Motion to Supplement is not a proper

motion to reconsider. Plaintiff does not present any type of evidence or argument that was unavailable to him when he responded to the OSC. Nevertheless, the court considers the Motion and the additional evidence Plaintiff filed with it. Even so, Plaintiff has again not provided most of the types of facts that courts typically consider in determining domicile, and the few documents he does provide do not suffice to show where he was domiciled when he filed this action.

I.      *The Motion to Supplement is Not a Proper Motion to Reconsider.*

Plaintiff's Motion to Supplement is not a proper motion to reconsider. Plaintiff raises arguments that he could have made in his Response to the OSC, and he attaches factual materials that were also available to him at that time.

The unsigned lease document bears a notary stamp of July 21, 2023 (ECF No. 71), but this predates Plaintiff's August 12, 2023 response by two weeks. The VA letter *post-dates* Plaintiff's August 12, 2023 response by approximately one week (ECF No. 72), but Plaintiff has previously filed in this court the same type of VA letter from 2022. *See, e.g.*, *Saxena v. Saxena-Kumar*, No. 1:22-cv-00321-LTB, ECF No. 1 at 10 (VA letter dated January 26, 2022, addressed to Plaintiff at the Corporate Way address in West Palm Beach). The Florida driver's license meanwhile reflects an issuance date of March 4, 2020. ECF No. 73. Thus, all of these materials and arguments were available to Plaintiff when he originally responded to the OSC, and the motion is not proper.

II.     *Plaintiff Again Does Not Show Where He Was Domiciled When He Filed This Action.*

Even construing the Motion to Supplement as a proper motion to reconsider, Plaintiff still has not shown by a preponderance of the evidence where he was domiciled when he filed this

case on November 28, 2022. Plaintiff again argues the fishing license suffices in itself, but he proceeds to add to the license a declaration, a lease he did not sign, the 2023 VA benefits letter, and his Florida driver's license. The court first addresses these items individually (Sections A-C, below) and then considers the totality of the circumstances (Section D).

A.      The Florida Fishing License Revisited

First, Plaintiff argues again that his fishing license suffices in itself to show he was domiciled in Florida—which is *not* the state of *Nevada* that he alleged in his complaint and amended complaint for his citizenship—because he had to provide documentation of state residence in order to obtain it. Motion to Supplement at 3-6. This argument is largely moot, as Plaintiff has now provided additional evidence.

Regardless, this court remains unpersuaded that the fishing license is entitled to more weight than the court gave it in the First Recommendation. The court recognized that the fishing license required Plaintiff to present, at the time, at least one of several forms of documentation the state would accept as proof of residency: either a valid Florida driver's license with a "Florida residency verified by Department of Highway Safety and Motor Vehicles," **or** a "current Florida voter information card," **or** a "sworn statement manifesting and evidencing domicile in Florida" under a state law, **or** proof of a "current Florida homestead exemption." First Recommendation at 8 (quoting the fishing license).

But Plaintiff does not cite (nor is this court aware of) any case crediting a fishing license as though it were *itself* indicative of the underlying documentation—documentation that Plaintiff chose not to provide to the court.[5] "Allegations founding jurisdiction of a federal court must be

---

[5] The court notes Plaintiff has not asserted that he needed more time to collect documentation or

precise." *Martinez v. Martinez*, 62 F. App'x 309, 314 (10th Cir. 2003) (quoting *Molnar v. Nat'l Broad. Co.,* 231 F.2d 684, 687 (9th Cir. 1956)). Even for a pro se litigant, the court could not treat a fishing license as though it were *also* a driver's license, the document that Plaintiff now explains he "used to procure the fishing license." Motion to Supplement ¶ 12.[6] The court thus continues to find that the fishing license shows only that Plaintiff was a *resident* of Florida as of March 26, 2020, and that *at that time,* he intended to remain in the state for the two-year period covered by the license. This remains a liberal construction in Plaintiff's favor, as the fishing license cost him nothing.

Plaintiff takes issue with the court having noted that he obtained the fishing license for free and argues that he received a discount as a veteran. Motion to Supplement ¶ 13. But the license says it is a "Disability License – 2 year SSA Qualification." ECF 70. It does not mention being a discount for veterans or disabled veterans. It is also not clear whether Plaintiff qualified as a disabled *veteran* as of March 2020; the VA letter reflects that it did not find him "totally and permanently disabled" until May 17, 2022—more than two years after he obtained the fishing license. ECF No. 72 at 1.[7]

---

that he was unable to collect it. Response to OSC (ECF No. 60). Rather, he took issue with the necessity of providing any records to establish his domicile. *Id.* at 2 ¶ 5. As will be seen below, Plaintiff continues to choose to limit the factual record before this court. Motion to Supplement (ECF No. 69) ¶ 1 ("The supplement includes . . . more redundant records"); ECF No. 69-1 ¶ 3 (asserting that there exist "a myriad of records required to obtain a special disabled Veterans fishing license, and beyond," but providing only a driver's license, unsigned lease, and VA letter that will be discussed below).

[6] Regardless, Plaintiff has now presented the driver's license, and the court considers it in this ruling.

[7] Plaintiff points out "[t]here was clearly another disability record of social security which needed to be filed to gain the fishing license," and argues that because social security is allegedly

In any case, the court did not suggest there was anything wrong in Plaintiff receiving the fishing license for free. Rather, the lack of payment simply undercuts the inference that when Plaintiff obtained the fishing license in March 2020, he had an intent to stay in the state for those two years, because he had invested no money to obtain it. Too, Florida does not offer a disability fishing license for less than a two-year period. *See* First Recommendation at 9 n.3. Nevertheless, the court drew the inference in Plaintiff's favor that, as of March 2020, he intended to stay in the state for the full period of the license, i.e., until March 26, 2022. *Id.* The court continues to draw that inference in his favor.

Plaintiff argues that, given the court's finding that he resided in Florida as of March 2020, the court erred in concluding that Plaintiff had not shown he was domiciled there for purposes of this case. Motion to Supplement ¶¶ 6-7. But residence is only prima facie evidence of an individual's domicile, and it is a rebuttable presumption. *See, e.g.*, *Holyfield*, 490 U.S. at 48 ("Domicile 'is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (citations omitted); *see also Tierney v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00274-PAB, 2022 WL 1135711, at *1 (D. Colo. Apr. 18, 2022) (noting "residency is

_____

"controlled at the state level," this likewise proves his residence and domicile was in Florida. Motion to Supplement ¶ 14. Again, the court cannot treat a fishing license as though it were also the underlying 2020 social security documentation that Plaintiff did not provide to the court.

While the court is not obligated to scour the docket for Plaintiff, it notes that on February 25, 2022, Plaintiff filed in *Saxena v. Law Offices,* 22-cv-212, his Form SSA-1099, *2021* Social Security Benefit Statement. ECF No. 5-1 (attachment to Colorado state court form). **But Plaintiff redacted his address in that document, and despite the OSC that required evidentiary proof of his citizenship when he filed this action, Plaintiff still has not filed an unredacted copy.** Even if Plaintiff had filed such documentation for the year when he obtained the fishing license, it is not clear how such documentation would help show Plaintiff's domicile as of November 2022, when he filed this lawsuit.

not synonymous with domicile . . . and only the latter is determinative of a party's citizenship")

(citing *Holyfield*). That is because the court must determine domicile based on the totality of the

circumstances. *Middleton*, 749 F.3d at 1200-01. The court accordingly proceeds to consider the

fishing license in connection with Plaintiff's other evidence, as discussed below.

> B.    *Plaintiff's Declaration*

Next, Plaintiff submitted a declaration in which he makes the following assertions:

> 2.    I established a domicile in Florida in 2010, when I left the military and the
> proof is shown on my DD-214 form as the location on the record.

> 3.    I have maintained a domicile in Florida from 2010, through current, which
> can be shown by a myriad of records required to obtain a special disabled
> Veterans fishing license, and beyond.

> 4.    My remaining family, my mother, lives in Florida and has been domiciled
> there for decades.

> 5.    My intent is to keep my legal address in Florida for the foreseeable future
> and return one day.

> 6.    I hereby declare and prove my continued domicile and citizenship in the
> U.S. state of Florida.

ECF No. 69-1.

The court begins by noting what the declaration does *not* say: where, at *any* time,

Plaintiff *actually* resided, carried on business or worked, voted, paid taxes, registered a vehicle,

maintained bank or other financial accounts, owned or leased real property, or belonged to any

associations at any time. These types of facts, identified in the OSC and First Recommendation,

inform the totality-of-the-circumstances inquiry the court is required to conduct in determining

Plaintiff's domicile. OSC at 5; First Recommendation at 7. All of these facts are within

Plaintiff's knowledge, but he did not discuss any of them in his declaration.[8]

As for what the declaration does say, it provides very few facts of any weight here:

In *Paragraph 2*, Plaintiff refers to—but did not file—a copy of his Form DD-214.[9]

Although the court is not obligated to do so, it has looked through the dockets of several of

Plaintiff's cases and has not found a copy of Plaintiff's Form DD-214. If Plaintiff has filed this

document, it was his responsibility to cite to it. In any event, it is not clear that a document listing

Plaintiff's home address at the time of his separation from the military in 2010 would have

bearing on the court's analysis of his domicile some twelve years later when he filed this action

in November 2022. Certainly by mid-2017, at least, the record in Plaintiff's criminal action in

Denver County Court (18M4572) that he alleges in this case (and in 22-cv-212) indicates that

---

[8] In addition, again, while the court is not obligated to comb the docket for Plaintiff, it has also reviewed for instance Plaintiff's Supplement filed at ECF No. 10-2, his statement to the Denver police department dated October 30, 2022, alleging what appears to be the same or similar facts that he alleges in this case. The form reflects his Cape Coral address as his residence and his (303) telephone number. *Id.* at 1.

The court also reviewed Plaintiff's Application to proceed in forma pauperis in *Saxena v. Law Offices,* 22-cv-212, ECF No. 3. Plaintiff stated therein that he owned a home, but the form does not ask (and Plaintiff did not identify) where the home was; he also stated that he owned two motor vehicles, and noted the monthly cost of vehicle registration, but the form does not ask (and Plaintiff did not identify) where he registered either vehicle. The form asked only for the city and state of Plaintiff's "legal address." *Id.* at 5 (stating West Palm Beach, Florida).

And as noted above, the court has also reviewed the supplemental information that Plaintiff filed in *Saxena v. Law Offices,* 22-cv-212, ECF No. 5-1 (Form SSA-1099, 2021 Social Security Benefit Statement), but Plaintiff redacted his address in that document. For reasons that will become clear, the court also notes that the Social Security document identifies Plaintiff as Grant M. Saxena *Kumar*. *Id.*

[9] The court takes judicial notice that Form DD-214 is the document that the Department of Defense issues at the end of a servicemember's duty. *See, e.g.*, <u>DD Form 214, Discharge Papers and Separation Documents | National Archives</u>.

Plaintiff was more likely domiciled in Colorado than in Florida. *See* 23-cv-213-DDD-SBP, *Saxena v. Jackson,* ECF No. 21-1. Likewise, Plaintiff's allegations that he had a home in Denver, Colorado during 2017-18, support the same conclusion. ECF No. 19 (amended complaint) at 7.

As for *Paragraphs 3, 5, and 6*, Plaintiff asserts that he established his domicile in Florida in 2010 and has maintained it there since. However, a party's statements as to his domicile carry little weight when they contradict the objective facts. *Loder v. MMFS Int'l Sa de Cv*, No. 08-cv-00781-PAB-MEH, 2009 WL 2514134, at *2-3 (D. Colo. Aug. 13, 2009) (citing *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996); *Townsend v. Bucyrus-Erie Co.*, 144 F.2d 106, 109 (10th Cir. 1944)). Here, the court gives these assertions as to domicile no weight because Plaintiff has also said that he "maintains split residency" between Florida *and Nevada* (*see, e.g.,* Objection at 4 ¶ 6), and indeed asserted in the complaint and amended complaint that he was a "citizen of the State of *Nevada*." ECF No. 1, 19 at 3 (emphasis added). Plaintiff's present statement that his domicile has been in Florida since 2010 directly contradicts these prior assertions.

Finally, "like other declarations . . . [these assertions] should be viewed in the light of the motive which prompted them." *Loder*, 2009 WL 2514134, at *2 (emphasis added, quoting *Townsend,* 144 F.2d at 109). "Ofttimes an unguarded course of conduct is more significant in the ascertainment of domicile or residence." *Townsend*, 144 F.2d at 109. Here, the court reasonably infers that Plaintiff has a motive to change his prior assertions of split residency in order to meet the requirement that Judge Domenico noted in the Order Overruling Objection: a domicile in *one* state, not various connections to multiple states.

Plaintiff would brush off the fact that, in his own words, he "wrote different addresses on the complaints and pleadings pointing to Nevada, then London, . . . [because he has] the

permanent Florida domicile registration in PACER, which is the same Cape Coral city address

. . . [which] has never changed throughout the course of litigation." Motion to Supplement at 6-7.

This is not persuasive for at least three reasons. First, Plaintiff did not just write addresses in his

pleadings; those are allegations to support diversity of citizenship. *See, e.g.*, *Martinez,* 62 F.

App'x at 314 n.1. ("precision and clarity" are required for facts supporting the court's

jurisdiction). In other words, the court cannot overlook the addresses Plaintiff alleged in his

complaint and amended complaint and simply look to the address he provides in ECF or

PACER. Second, the address Plaintiff declares in PACER does not in itself establish *domicile*,

which again must be based on the totality of the circumstances. And third, for reasons the court

addresses below, the Cape Coral address appears to be just a mailing address and not a place of

residence.

    As for *Paragraph 3's* mention of the fishing license, the court addressed this document

above and will address it again in conjunction with the driver's license Plaintiff has now filed.

    As for *Paragraph 5,* Plaintiff's intent to maintain his "legal address" in Florida does not

support domicile. Plaintiff does not explain what he means by a "legal address." Because his

Motion to Supplement and declaration both avoid stating that Plaintiff actually *lived* in Florida

before or at the time he filed this action, his intent to "keep a legal address" in that state only

underscores what the court previously found: Plaintiff has shown only that the addresses in

Florida are mailing addresses.

    As the court noted in prior rulings, mailing addresses do not suffice to establish domicile

because they do not indicate physical presence in the state. *See, e.g.*, *Bell v. Iozzo*, No. 22-CV-

10888 (LTS), 2023 WL 2186452, at *3 (S.D.N.Y. Feb. 23, 2023) ("A mailbox is insufficient to

establish domicile," internal quotation omitted); *Walden v. Liberty Mut. Ins. Corp.*, No. 18-cv-00097-PAB, 2018 WL 495185, at *2 (D. Colo. Jan. 19, 2018) (finding that alleging a post office box as address did not suffice to establish domicile, and requiring the party asserting jurisdiction to show cause); *Fort v. Abzco, LLC*, 470 F. Supp. 3d 133, 137 (D.P.R. 2020) (same); *Pac. Specialty Ins. Co. v. Poirier*, No. 18-cv-00880-PAB, 2018 WL 4697323, at *1 (D. Colo. June 27, 2018) ("domicile, not residency or mailing address, is determinative of citizenship," citing *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972)). Meanwhile, Plaintiff's intent to "return one day" is likewise insufficient to support domicile. *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir. 1983) ("A floating intention to return to a former domicile does not prevent the acquisition of a new domicile.").

As to *Paragraph 4*—Plaintiff's assertion that his mother has been a citizen of Florida for decades—the court takes judicial notice of Plaintiff's case captioned *Saxena v. Saxena-Kumar*, 1:22-cv-00321-LTB (filed February 2, 2022). In that case, Plaintiff purported to sue his parents, whom he identified as Judith Ann Saxena-Kumar and Jay Saxena-Kumar.[10] 22-cv-321, ECF No. 1 at 5 ¶ 1. There, Plaintiff asserted diversity jurisdiction by alleging he was a citizen of Florida (at the Corporate Way address in West Palm Beach), and that his parents were residents and citizens of *Colorado*. *Id.* at 3. He alleged a specific address in Denver, Colorado as his parents' home.

Plaintiff's mother (or both parents) may maintain homes in both Florida and Colorado,

---

[10] As of February 2, 2022, Plaintiff alleges Jay and Judith Saxena-Kumar are his parents. 22-cv-321, ECF No. 1 at 5 ¶ 1. The case was dismissed on March 23, 2022, for failure to pay the filing fee.

but Plaintiff's present assertion that she is a decades-long *citizen* of *Florida* directly contradicts his assertion in 22-cv-321 that she was a *citizen* of *Colorado* in February 2022. "For purposes of federal jurisdiction, a person can have only one place of domicile." *Chaparro v. Erickson*, No. 06-CV-138-B, 2007 WL 9706582, at *2 (D. Wyo. June 11, 2007) (citing *Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994)). *See also* Wright & Miller, 13E *Fed. Prac. & Proc. Juris.* § 3612 (3d ed.) (noting same). Plaintiff has thus given this court two contradictory stories about his mother's citizenship to manufacture diversity of citizenship here. The court accordingly finds Plaintiff's statement on this issue not credible.

In sum, this court finds that Plaintiff's declaration adds little or no weight to support his contention that he was domiciled in Florida when he filed this case.

C.       *The Documents Filed with the Motion to Supplement*

Plaintiff filed three additional documents with his Motion to Supplement.[11] The court addresses these in the order that Plaintiff filed them.

1.       *Unsigned Lease Contract for Parent's Home in Cape Coral*

First, Plaintiff submits a one-page document entitled "Lease Contract" between Plaintiff as tenant/lessee and "Cape Management" as landlord/lessor for a residential property in Cape Coral, Florida. ECF No. 71. As noted above, the address for the property is the same as the address of public record that Plaintiff uses in ECF for this case. The stated rental period was March 1, 2020, to February 28, 2023. The document has an electronic, typed signature for the

---

[11] Although Plaintiff filed these documents subject to a level 2 restriction on access and filed a motion to restrict the same, none of the information that the court discusses in this ruling is confidential. The address for Plaintiff therein is the same that he publicly uses as his address in ECF.

Landlord: "Cape Management – Agent: *J. Kumar*," dated February 29, 2020. The document contains a Florida notary public's stamp and the signature of "Alces Scotland, 07/21/23." *Id.* Thus, the notary signed the document over three years after the date of J. Kumar's typed signature.

Numerous problems with this document cause it to carry no weight here. First and foremost, *Plaintiff did not sign this document*. The court has found no case that considers an unsigned lease to suffice (in whole or in part) to show a litigant's domicile. To the contrary, even when the litigant provided some evidence of payment on an unsigned lease—which Plaintiff has not done here—the Tenth Circuit has rejected such an argument. In *Martinez*, the Tenth Circuit found insufficient to establish domicile an "unsigned lease agreement, a purported rent check signed by a third party, a Kansas bank statement sent to a post office box in Texas, a Wisconsin bank statement sent to a post office box in Wisconsin, and a check with plaintiff's name and a Texas address on its face. *Martinez*, 62 F. App'x at 314 n.1 Here, Plaintiff provides no evidence that he paid rent under this document, or that he otherwise lived at the property leading up to or at the time he filed this action.

Second, the document offers no explanation for why the notary public signed and stamped the document *more than three years* after the date of J. Kumar's signature. The notary did not indicate that he or she administered an oath to J. Kumar or confirmed that J. Kumar signed the document in his or her presence, whether in person or virtually. Plaintiff does not attempt to explain any of these facts.

Third, even assuming that the signature of J. Kumar and its date in 2020 are authentic, "J. Kumar" is a shortened form of the name Plaintiff alleges for his parents: Jay Saxena-Kumar or

Judith Saxena-Kumar. *See supra* regarding 22-cv-212, ECF No. 5-1 (2021 Form SSA-1099 identifying Plaintiff as Grant M. Saxena Kumar) and regarding Plaintiff's separate action against his parents, 22-cv-321. Although Plaintiff does not point this out, the court notes that the copy of the OSC that was mailed to Plaintiff at the Cape Coral address was not returned.[12] However, considering that the property is owned or managed by one or both of his parents, this is equally consistent with Plaintiff merely using the property as a mailing address; it does not establish that Plaintiff has actually lived in the Cape Coral property at any time.

### 2.   *2023 VA Letter to the Cape Coral Address*

Plaintiff's second document is a letter from the VA dated August 17, 2023, addressed to Plaintiff at the Cape Coral address. ECF No. 72. The letter notes Plaintiff was released or discharged from duty on August 28, 2010, but it does *not* note Plaintiff's address at that time. Nor does the VA letter purport to identify Plaintiff's address at any time other than when it was sent: on August 17, *2023*. The VA letter is merely consistent with Plaintiff's using the Cape Coral address as a mailing address, in light of the facts he has placed in the record before the court: (1) Plaintiff uses several mailing addresses, (2) Plaintiff states in his declaration only that he intends to keep a "legal address" in Florida and return there someday, and (3) Plaintiff provides no evidence that he actually *lived* at the Cape Coral address after March 2020—he does not, for instance, submit evidence showing that he received VA benefits checks in Cape Coral or maintained a bank account there. Put simply, the record is devoid of evidence showing that Plaintiff lived or currently lives in Cape Coral. This letter thus carries very little weight in this

---

[12] Plaintiff has been a pro se e-filer in this case for quite some time. The only formal certificate of service by mail to Plaintiff is for the courtesy copy of the OSC. ECF No. 52.

court's evaluation as to where Plaintiff was domiciled in November 2022.

### 3.    Florida Driver's license

Plaintiff's third document is a copy of a Florida driver's license, issued March 4, 2020, and expiring in 2028, which lists the same Cape Coral address noted above. ECF No. 73. What this shows is that Plaintiff had an unexpired driver's license from Florida when he filed this action, and it remains unexpired. Like the fishing license, the driver's license required Plaintiff to provide proof of residency in Florida when it was issued. But again, even assuming that Plaintiff actually lived in his parent's home in Cape Coral in March 2020, residency in and of itself is not enough to establish domicile.

### D.    The Totality of the Circumstances

Taking together all of Plaintiff's documents and those allegations that carry some weight, Plaintiff has provided only the following facts:

- As of November 28, 2022, the date he filed this action, he had an unexpired Florida driver's license;

- As of November 28, 2022, he had a free Florida fishing license with two months remaining before its expiration;

- As of November 28, 2022, he claimed mailing addresses on Corporate Drive in West Palm Beach, Florida; Cape Coral, Florida; and London, United Kingdom; and

- As of March 2020 (the court infers from the fishing license), he had met Florida's definition of a resident.

This evidence does not suffice to show that Plaintiff was domiciled in Florida on November 28, 2022, when he filed this lawsuit. The court is aware of no cases finding that similar facts were sufficient to show a litigant's domicile, and particularly not in a case such as

this, where the litigant's filings reflect numerous inconsistencies concerning his domicile. To be sure, mailing addresses, driver's licenses, and fishing or hunting licenses are part of the totality-of-the-circumstances analysis, but some additional proof of physical presence with intent to remain in a place is required to establish domicile. In *Loder*, Chief Judge Brimmer noted with approval that "[a]s for the [litigant's] driver's license and voter registration, at least one court found that similar evidence was not enough to establish that a party necessarily maintained her domicile in a particular state." *Loder,* 2009 WL 2514134 at *2 (citing *Lawson v. Morgan,* 352 F. Supp. 282, 283 n. 1 (E.D. Pa. 1973)).[13] More recently, Chief Judge Brimmer noted that voter registration is particularly helpful in establishing a litigant's domicile:

> Voter registration is persuasive evidence of a person's citizenship because an individual registering to vote often must declare, under penalty of perjury, that he or she has been a resident of the state for a period of time before registration and that the address provided on the registration is the registrant's only place of residence.

*Tierney*, 2022 WL 1135711, at *1 (citing *Searle v. CryoHeart Labs., Inc.*, No. 20-cv-03830-PAB, 2021 WL 1589268, at *2–3 (D. Colo. Apr. 22, 2021)); *see also, e.g.*, *Harrell v. Adams*, No. 2:18-cv-00536 WJ/GF, 2018 WL 4442211, at *3 (D.N.M. Sept. 17, 2018) (finding that a driver's license and fishing and hunting licenses, in combination with voter registration in the same state, was sufficient to establish that the litigant "resides in Texas and intends to remain there indefinitely"); *Slate v. Shell Oil Co.,* 444 F. Supp. 2d 1210, 1216-17 (S.D. Ala. 2006) (finding the litigant was domiciled in Alabama, where he had his "mailing address, telephone numbers,

---

[13] In *Loder*, the litigant did not actually submit either his driver's license or voter registration, but only a statement of his "declared domicile for purposes of voting and the issuance of a United States Driver's License." *Id.* at *2.

driver's license, vehicle registration, voting registration, banking arrangements, hunting/fishing licenses, gun permit, and health care providers," despite working and living four days a week in Louisiana). *Cf. Bruton v. Shank*, 349 F.2d 630, 632 n.1 (8th Cir. 1965) (South Dakota driver's license and hunting and fishing license did not outweigh the evidence that the litigant had moved to California with the intent to remain).

Here, Plaintiff has chosen not to disclose to the court where he was registered to vote at any time. He also has chosen not to disclose where—at the time he filed this action—he actually resided or carried on any of the other activities that courts typically consider in determining an individual's domicile, including voting, banking, paying taxes, registering a vehicle, belonging to associations, and seeking health care. In the meanwhile, Plaintiff has disclosed multiple mailing addresses in different states (and in this case, he claims an address in the United Kingdom); multiple telephone numbers, none of which are from Florida; and has twice represented in this case that he maintains split residency between Florida and Nevada.

In addition, Plaintiff alleged in this case that he was a citizen of *Nevada* when he filed the case and when he amended his complaint. ECF Nos. 1, 19 at 2-3. He now claims instead that he was consistently domiciled in Florida since 2010. And as noted above, in attempting to bolster his family connections to Florida to support diversity in this case, he also directly contradicts his prior assertion that his mother was a citizen of Colorado. Through it all, the only *residence* Plaintiff has actually identified in his pending cases is his home in Denver, Colorado, where he lived in 2017 and at least 2018. ECF No. 19 (amended complaint) at 7-8.

Moreover, as the court noted in the OSC, Order Overruling Objection, and First Recommendation, Plaintiff's allegations—in his complaint, amended complaint, and in ECF—of

the address in London, England only further complicate the analysis of his citizenship. If he was actually domiciled abroad when he filed this case, he was a stateless person who does not have diversity. *Jones v. Dalrymple*, 679 F. App'x 668, 669–70 (10th Cir. 2017). Plaintiff's declaration reflects that—at least after the court pointed out that issue to Plaintiff—he does not consider himself to have been domiciled in London when he filed this case. But he also does not rescind his statement in prior filings (noted in the OSC at 9 n.3) that during the course of this case, he intended (or still intends) to become a citizen of the United Kingdom.

Plaintiff's facts resemble those in *Martinez*, in which the Tenth Circuit found that the "plaintiff's tenuous ties to several states . . . in no way meet the level of precision and clarity required to invoke the court's jurisdiction." 62 F. App'x at 314 n.1. In short, despite the court liberally construing Plaintiff's allegations, filings, and evidentiary documents in the light most favorable to him, Plaintiff again has not met his burden to show where he was domiciled when he filed this case. He thus has failed to support his assertion of diversity jurisdiction.

## CONCLUSION

Accordingly, this court again RECOMMENDS dismissing this case without prejudice for lack of subject matter jurisdiction.[14] **The court RECOMMENDS granting in part and**

---

[14] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting

**denying in part Plaintiff's Motion (#69) to Supplement. The court recommends granting the motion only to the extent that the court has considered the motion and its exhibits in again recommending dismissal for lack of subject matter jurisdiction.**

This court also DENIES Plaintiff's motions (ECF Nos. 42, 45) for more definite statement or to strike Ms. Hall's answer, without prejudice to refiling if this recommendation is not adopted; DENIES IN PART and FINDS MOOT IN PART Plaintiff's motion (ECF No. 80) to strike Ms. Hall's responses; and GRANTS Plaintiff's motions (ECF No. 58 and 70) to restrict his filings (ECF Nos. 59 and 71-73) of his already-redacted Florida fishing license, as it is unclear to the court whether the state's unredacted "customer ID" number in this document may be confidential; and his already-redacted unsigned lease, VA letter and Florida driver's license, as it is likewise unclear whether any of the unredacted information therein may be confidential. Giving Plaintiff the benefit of the doubt on that issue, the court will consider the criteria of Local Rule 7.2 to be met.[15]

The court further RECOMMENDS denying Plaintiff's motion for default judgment (ECF No. 48) and motion to consolidate cases (ECF No. 75) as moot if this recommendation is adopted, in light of this court's recommendation to dismiss the case for lack of subject matter jurisdiction.

Finally, in the course of reviewing the docket for this recommendation, the court notes

---

and the consequences of failing to object").

[15] In the Motion to Supplement, Plaintiff asserts that federal rules required a ruling on his motion to restrict within two weeks. Local Rule 7.2 instead requires the person seeking leave to restrict to file his motion within two weeks of filing the subject document to avoid having the restriction expire. D.C.COLO.LCivR 7.2(e). Here, Plaintiff did so and the restrictions have never expired.

that Plaintiff filed CBI records concerning the Defendants and a non-party as a public document. ECF No. 10-2. Some of those records clearly state "juvenile." Although "there is no legitimate expectation of privacy in one's criminal history" to protect such information from use in law enforcement and other authorized purposes, *United States v. Burleson,* 657 F.3d 1040, 1047 n.4 (10th Cir. 2011), "a third party's request for law enforcement records . . . can reasonably be expected to invade that citizen's privacy." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 780 (1989). *See also Auguste v. Alderden*, No. 03-cv-02256-WYD-KLM, 2008 WL 3211283, at *5 (D. Colo. Aug. 6, 2008) (citing *Reporters Comm.,* finding privacy right in criminal history summaries of third parties). Colorado law also restricts disclosure of juvenile criminal history records to circumstances specified in the statute. Colo. Rev. Stat. § 19-1-304(2)(A). The Clerk's office is therefore requested to restrict ECF No. 10-2 at Level 2.

DATED: January 4, 2024                    BY THE COURT:

                                          _____
                                          Susan Prose
                                          United States Magistrate Judge